

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

> Opinion No. O-2031
> Re: Authority of Comptroller of
> Public Accounts, under Arti-
> cle 7065a-13(b), Vernon's
> Annotated Civil Statutes, to
> honor motor fuel tax refund
> claim of individual purchas-
> ing motor fuel from a dis-
> tributor without the license
> required for such purpose by
> the statute referred to.

We are in receipt of your letter of March 19, 1940, submitting for the opinion of this department the following question, which we quote:

"I am enclosing letter written to this de-
partment and you jointly by Wilchar & Wilchar,
Attorneys, El Paso, for McNutt Oil & Refining
Company situated in Brickland, New Mexico, with
reference to claim for refund of motor fuel tax
to customers of McNutt Oil & Refining Company
on motor fuel sold by such company during the
period from September 1, 1939 to October 19,
1939, the period which McNutt Oil & Refining
Company sold refund motor fuel and did not have
license for such purpose. Since considerable
controversy has arisen with reference to the re-
fund of the tax on this particular motor fuel,
this department requests that you answer the
questions propounded in the letter from Wilchar
& Wilchar attached hereto.

"Except for the language in the first para-
graph of such letter, reading as follows: '. . . .,
and for a long time prior to the effective date

of this law the Comptroller had furnished my
client with necessary forms to use when sell-
ing exempt motor fuel,' as far as this depart-
ment has knowledge other statements in the let-
ter are true and correct, but the above quoted
statement is incorrect insofar as it asserts,
'. . . the Comptroller had furnished my client
with necessary forms.' Prior to September 1,
1939, the Comptroller prescribed the forms for
use in claiming refund of the motor fuel tax
but did not furnish same. The Comptroller has
always furnished the claim form."

The more detailed factual situation which prompt-
ed your inquiry is copied from the attached correspondence
referred to as follows:

"My client, McNutt Oil & Refining Company,
whose principal plant is situated at Brickland,
New Mexico, just across the border from El Paso,
has been oil refiners, wholesale distributors
and retailers of motor fuel, as well as manufac-
turers of motor fuel, and throughout the years
have paid taxes to the Comptroller of Public
Accounts. Article 7065a-13, regarding exemp-
tion and refunds, went into effect on September
1, 1939, and for a long time prior to the effec-
tive date of this law the Comptroller had fur-
nished my client with necessary forms to use
when selling exempt motor fuel. Being apprised
by circular or otherwise that under the proposed
new law it would be necessary to secure a li-
cense to sell exempt motor fuel, although no
charge would be made for the license, my client,
on July 27, 1939, in a letter to the Comptroller
of Public Accounts, Austin, Texas, requested
'two applications for Texas State license in
connection with the recently enacted motor fuel
law pertaining to refund exemptions.' I have
in the file a carbon copy of the letter. This
letter was duly mailed at the United States Post
Office.

"After July 27th and up to October 19, 1939,
my client, in accordance with what they had cus-
tomarily done theretofore, paid taxes to the
Comptroller in approximately the sum of $125.00
on tax exempt motor fuel; that is to say, the
purchasers thereof would be entitled to a refund
in approximately the sum of $125.00, and in each

instance mailed directly after each transaction to the Comptroller of Public Accounts copies of the invoices of exemption on sales, in accordance with invoices customarily used prior to the effective date of the new law in reference thereto. It is my understanding that there is no material difference in the invoices of exemption used before and since the effective date of the new law.

"On October 9, 1939, not having received an answer to the application made for licenses made on July 27th, my client again requested necessary forms, etc., and this was finally secured on October 19, 1939. On October 7, 1939, the Comptroller wrote to my client, in effect, that invoices of exemption issued by them on Form 7065-B had been coming to the Comptroller's office; that these forms were obsolete as shown by a phamphlet of the law enclosed with the letter. Some of the purchasers of exempt motor fuel requested tax refunds, and in answer thereto the Comptroller wrote them that their dealer had not used the new form of invoice of exemption and declined to make the refund, and in the letter to the purchasers they were admonished that in the future they should be careful to see that they bought from licensed dealers.

"On November 9, 1939, the Comptroller wrote to my client as follows:

"'Gentlemen:

"'I am in receipt of your letter of October 25th in reference to License to Sell Refund Motor Fuel, which was discussed with you recently by a supervisor working out of this department. I call your attention to the excerpt of the law at the bottom of page #4 of the pamphlet sent you at the time Application for License to Sell Refund Motor Fuel was sent, which prohibits this department making refund on any motor fuel unless such motor fuel has been purchased from or used by a licensed distributor. For this reason the invoices of exemption issued on the old form by you after September 1st cannot be protected.

"'This may appear to be a little harsh, however, you had knowledge of the change and that you must have a license. You failed to

follow up any requests which might have been made by you as stated in your letter of October 25th, which reads as follows: '. . . this letter was filed and the proper follow-up was not made.'

"'I have made a thorough search and fail to find any record of a request having been received from you on or about July 27th, and this was more than 30 days prior to the time the change was made.

"' I regret that this oversight occurred and that I am not in a position to assist further.'"

Upon the foregoing facts, the contention of this refund claimant, by his attorney, is as follows:

"In view of the fact that the Comptroller is presumed, under the law, to have received the application for the license, although his records do not show the application; and in view of the fact that they had been prominent dealers in motor fuel for years, and had been continuously selling exempt motor fuel and had been continuously making reports in accordance with forms prescribed by the Comptroller; and in view of the fact that the Comptroller's office had been receiving these vouchers from the sales as they were made and no notice was given to McNutt Oil & Refining Company that they had not yet been licensed; and in view of the fact that unless the Comptroller makes these refunds to the purchasers of exempt motor fuel my client is honor-bound to make restitution out of their own pocket thereof; and in view of the fact that the State will be unduly enriched to the extent of the amount thereof, my client feels that in justice and equity the purchasers of this exempt motor fuel should have the taxes refunded to them when they make proper application."

Although the above factual statement presents certain conflicts, such as whether or not the application of McNutt Oil & Refining Company for a license as a distributor of motor fuel, taxes on which are subject to refund, was received by the Comptroller's department prior

to the effective date of the regulatory statutes in such
cases provided, we must say that it is not the proper prov-
ince of this department to resolve such fact issues, but
only to advise if this factual situation, even viewed most
favorably to refund claimant, shall be allowed to alter,
modify or override the plain and unambiguous terms and pro-
visions of Article 7065a-13(b), Vernon's Annotated Civil
Statutes, providing, in part, as follows:

"No refund of the tax shall be granted on
any motor fuel to any person, claimant, firm,
corporation, or otherwise, unless such motor
fuel has been purchased from or used by a li-
censed distributor as provided for in this Act;
and the Comptroller is hereby prohibited from
issuing warrant in payment of any refund of the
tax on any motor fuel not purchased from a li-
censed dealer, except refund on motor fuel ex-
ported or lost by accident, or used by distrib-
utor for refund purposes."

The instant case falls squarely within the above
statutory prohibition in regard to the issuance by the Comp-
troller of Public Accounts of refund warrants, because it
is admitted by all parties to this controversy that sales
of motor fuel by McNutt Oil & Refining Company during the
period beginning September 1, 1939, and ending October 19,
1939, upon which claims for motor fuel tax refund are in-
volved, were made before said company became a licensed
distributor for this purpose under subdivision (b) of the
above cited refund section of the Motor Fuel Tax Law pro-
viding as follows:

"Any person or distributor desiring to
appropriate or sell motor fuel on which a refund
of the tax is authorized by this Act shall, be
fore making such appropriation or sale, make ap-
plication to the Comptroller of Public Accounts,
upon forms to be prescribed by the Comptroller
and containing such information as the Comptroller
may require, for a license to sell such motor fuel;
and it shall be unlawful for any person to sell
or appropriate any motor fuel upon which a refund
of the tax will be made, or is intended to be made,
without first having obtained from the Comptroller
of the State of Texas a license to sell or appro-
priate such motor fuel.

"A separate application shall be made to
the Comptroller by such person or distributor
for each place of business from which refund

motor fuel is to be sold or distributed by such
person or distributor, and the Comptroller shall
issue a separate license for each such place of
business. The Comptroller shall examine each ap-
plication for license received by him, and if
found in due form, and if within the discretion
of the Comptroller the applicant is entitled to
such license, the same shall be issued. When
such application is approved by the Comptroller
the applicant for license shall be required to
file oath with the Comptroller that he will
faithfully perform and comply with the statute
making provision for the sale and distribution
of motor fuel subject to a refund of the motor
fuel taxes. Each license issued hereunder shall
remain in full force and effect until the first
day of March following its date of issue, and
annually on the first day of March each appli-
cant, person or distributor, desiring to sell
or appropriate motor fuel upon which a refund
of the tax is authorized must obtain from the
Comptroller a license, or a renewal of his ex-
isting license, to sell such motor fuel as here-
in provided. Any license issued hereunder is
not transferable unless such transfer is author-
ized by the Comptroller. Any person who sells
motor fuel upon which a refund of the tax may be
authorized, or is claimed, under the provisions
of this Act, without having obtained a license,
as provided for underthis Act, shall be guilty
of a misdemeanor and upon conviction shall be
liable in any sum not to exceed One Thousand
($1,000.00) Dollars, or by a jail sentence not
to exceed six (6) months in jail, or by both
such fine and jail sentence."

McNutt Oil & Refining Company, having failed to
comply, in any respect, with the foregoing statutory for-
malities, designed to more effectively enforce and control
the administration of the refund provisions of the Motor
Fuel Tax Law and prevent abuses thereof, we are constrain-
ed, as a matter of law, to uphold in its full integrity
that expressed prohibition of the same statute that "no
refund of the tax shall be granted on any motor fuel to
any person, claimant, firm, corporation, or otherwise,
unless such motor fuel has been purchased from or used
by a licensed distributor as provided for in this Act;
and the Comptroller is hereby prohibited from issuing

warrant in payment of any refund of the tax on any motor fuel not purchased from a licensed dealer."

We are not unmindful of the hardships and the inequity to be visited in this instance upon these refund claimants because of the failure of the distributor with whom they dealt to comply with the plain mandate of the Legislature hereinabove set out, but the Legislature of Texas has spoken in unmistakable terms in prohibiting refunds in these cases, and this department is not at liberty to depart from, alter or modify the plain letter of the statute to meet the stress and contingencies of individual cases of hardship such as the instant case. Both presumptively and actually, McNutt Oil & Refining Company was apprized of the requirements and conditions of the statutes governing the business in which they were engaged, and the law takes no cognizance and makes no exceptions of the reasons and excuses for not complying therewith. The terms of the statute are mandatory rather than permissive, and the Comptroller of Public Accounts has no discretion in the matter of allowing and passing to warrant, refund claims for motor fuel taxes on motor fuel sold by unlicensed distributors, but is required by law to disallow such claims.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Pat M. Neff, Jr.
Assistant

PMN:LM

APPROVED APR 4, 1940

FIRST ASSISTANT
ATTORNEY GENERAL



APPROVED
OPINION
COMMITTEE
BY [signature]
CHAIRMAN